MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

JONATHAN SCHMIDT (CABN 230646)
Assistant United States Attorneys

    450 Golden Gate Ave., Box 36055
    San Francisco, California 94102
    Telephone:  (415) 436-6940
    Facsimile: (415) 436- 7234
    E-mail: jonathan.schmidt@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No.    CR 10-00080 JSW |
| | ) | |
|     Plaintiff, | ) | UNITED STATES' SENTENCING |
| | ) | MEMORANDUM AND MOTION FOR |
|     v. | ) | DOWNWARD DEPARTURE |
| | ) | |
| KING CHUEN TANG | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |

**INTRODUCTION**

    The United States respectfully recommends a sentence of 41 months' imprisonment for defendant King Chuen Tang.  The United States believes that this sentence appropriately accounts for the seriousness of the offense, the history and characteristics of the defendant, and the need to promote justice and respect for the law.

    The government has yet to receive a final PSR.  The United States anticipates that the PSR will calculate the Guidelines range to be 57-71 months' imprisonment, and recommended a 57-month sentence.  Because of Tang's substantial assistance, the United States recommends a downward departure to a sentence of 41-months' imprisonment.

## **BACKGROUND**

The parties agree to the basic facts of the case, which are detailed in the plea agreement and the PSR.[1]  Tang has worked in several financial positions.  Tang together with several friends, including Joseph Seto and Zisen Yu, set-up two investment partnerships – American Pegasus and Acceleration Capital Partners.  The partnerships allowed any of the partners to trade in the accounts.  Any profits or losses were split proportionately, based on each partner's capital investment.  Tang often discussed market research and trading strategy with Seto and Yu.

Tang's brother-in-law, Ronald Yee was the Chief Financial Officer of ValueAct Capital, a private equity fund.  In April 2007, ValueAct began to consider a bid to acquire Acxiom Corporation, a publically traded technology company.  Around that time, Yee mentioned to Tang that it would be a good time to purchase Acxiom shares.  Tang understood that Yee's advice was based on material non-public information.  Tang shared Yee's advice with Seto, Yu, and others. From April 23 to May 16, 2007, Tang and the people with whom he shared the advice purchased Acxiom securities.  On May 17, Acxiom announced that it had agreed to be purchased by ValueAct.  That day Acxiom's stock rose by approximately 18 percent.  After May 17, Tang and others sold their Acxiom shares netting approximately $3.7 million.  Tang's share of the profits was approximately $480,000.

From October 2007 through April 2008, Tang was the Chief Financial Officer at Friedman, Fleischer, and Lowe (FFL), a private equity fund.  Through his work in FFL, Tang learned of two facts that constituted material, non-public information: (1) that the company Tempur-Pedic International, Inc. (Tempur) planned a pre-announcement on March 17, 2008, a month ahead of its scheduled earning announcement, and (2) that FFL planned to purchase up to $50 million in Tempur shares shortly after the pre-announcement.

Tang shared that information with Seto and Yu.  Between March 13 and March 24, 2008

---

[1]  The facts described here come from the PSR, ¶¶ 5-13, unless otherwise noted.

Tang, Seto, Yu and others traded on the inside information and made approximately $1.9 million.   Tang's share of the profits was approximately $234,000.

On October 30, 2009, the SEC filed a complaint charging Tang, Seto, Yu, and others with insider trading.  *SEC v. Chen Tang, et al*., CV 09-5146 JCS (N. D. CA).  The SEC complaint alleged insider trading involving the 2007 Acxiom trades and the March 2008 Tempur trades.

On February 5, 2010, the United States filed the Information in this case.  The Information charged Tang with conspiracy and insider trading in violation of 18 U.S.C. § 371, and 15 U.S.C. § 78j(b) and 78ff.  The allegations in the Information covered the Acxiom and Tempur trades.  On March 15, 2010, Tang pled guilty to both counts of the Information, pursuant to a cooperation agreement.

On June 22, 2011, the United States filed a one count Information charging Seto and Yu with conspiracy to commit insider trading in violation of 18 U.S.C. § 371.  CR 11-00397 JSW. The allegations focused on the Tempur trades.  Seto and Yu were sentenced on February 21, 2013.

The SEC has settled its case with Tang, Seto, and Yu.  The parties have agreed to disgorgement and are still working out the disgorgement details.  The other SEC defendants have submitted settlement proposals, which are under consideration by the SEC.

## DISCUSSION

The overarching goal of a sentencing court is to impose a sentence that is sufficient to "reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment." *United States v. Ressam*, 679 F.3d 1069, 1088-89 (9th Cir. 2012) (*en banc*); 18 U.S.C. § 3553(a)(2).  The Court should begin the sentencing process by correctly calculating the applicable Guidelines range and must "remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).  The Court should then consider the factors outlined in §3553(a) to

determine the appropriate sentence. *Ressam*, 679 F.3d at 1089.  If the Court determines that a sentence outside of the Guidelines range is warranted, the "justification must be sufficiently compelling to support the degree of the variance" such that "a major departure should be supported by a more significant justification than a minor one." *Id*.; *Gall*, 552 U.S. at 50.

**A.    Sentencing Guidelines**

The draft PSR has noted an error in the Guideline calculations in the plea agreement and the United States anticipates that the final PSR will recommend the calculations set out below. The United States agrees with these calculations:

| **Guideline** | **Guideline Section** | Points |
|---|---|---|
| Base Offense Level | U.S.S.G. § 2B1.4 | 8 |
| Specific Offense Characteristics: Gain $2.5-7 MM | U.S.S.G. § 2B1.1(b)(1)(J) | +18 |
| Abuse of Position of Trust | U.S.S.G. § 3B1.3 | +2 |
| Acceptance of Responsibility | U.S.S.G. § 3E1.1(a) & b | -3 |
| **Adjusted Offense Level** | | **25** |

Mr. Tang has no criminal history.  The United States anticipates that his Guidelines range will be 57- 71 months' imprisonment.

**B.    U.S.S.G. § 5K1.1 Departure**

Under U.S.S.G. § 5K1.1, upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person, the Court may depart from the Guidelines.  A non-exhaustive list of factors for consideration includes:

1.    the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

2.    the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

3.     the nature and extent of the defendant's assistance;

4.    any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

5.      the timeliness of the defendant's assistance.

Tang provided substantial assistance in the investigation and the prosecution of others. His cooperation led to the prosecution of Seto and Yu and helped in the investigation of other potential defendants, and in the parallel SEC cases.  The government accordingly moves for a downward departure under U.S.S.G. § 5K1.1.

Tang's Cooperation in this case was significant because, before he cooperated, the evidence was largely circumstantial consisting of telephone and trade records.  The telephone calls could be explained by the Tang' friendship with Seto and Yu, and some suspect trades could be attributed to Tang and the other trader's legitimate market research.  For example, there are February 2008 trades in Tempur, before Tang learned the insider information.  Furthermore, to establish insider trading, the government must show that the tippee knew that the tipper breached a duty of trust, which is difficult to establish without witness testimony.

Tang was the first defendant to cooperate and he explained that he shared inside information with Seto and Yu.  His information was crucial in the investigation of the case and the prosecution of Seto and Yu.  But for Tang's cooperation, it is doubtful that Seto and Yu would have pled guilty.

In addition to assisting in the prosecution of Seto and Yu, Tang helped in the investigation of other potential defendants.  Through attorney proffers, interviews and depositions, he helped clarify the evidence against other potential defendants.  This information was particularly helpful to the SEC; Tang's cooperation was instrumental in the SEC resolving its cases with the remaining SEC defendants.

Tang cooperated early in the investigation.  The information he provided was truthful, complete, and reliable.

Based on a consideration of all these factors, the United States moves for a downward departure to a sentence of 41 months' imprisonment.

**C.     18 U.S.C. § 3553(a) Factors**

      1.     <u>Nature and Circumstances of the Offense</u>

Insider trading is at core a breach of trust.  *See United States v. Chiarella*, 445 U.S. 222, 227-231 (1980); *Dirks v. SEC*, 463 U.S. 646, 654 (1983).  It is the tipper/insider who commits this breach, with the tippees liable for their "role as participants after the fact in the insider's breach of a fiduciary duty."  *Chiarella*, 445 U.S. at 230 n. 12.  The harm from the insider's breach of trust has a ripple effect.  It undermines confidence in the integrity of the financial markets, disadvantages ordinary investors who follow the rules, and violates the confidence of companies whose information is misappropriated.  Tang's breach of trust was particularly egregious because of his role at FFL.  Tang was a CFO entrusted with inside information.  He had a duty to keep that information confidential.  Here, not only did he share the information with others, he then traded and had others trade illegally on that information.

The nature and circumstances of Tang's sharing of and trading on inside information calls for a substantial sentence.

      2.     <u>History and Characteristics of the Defendant</u>

Tang has no criminal history.  He is educated, has responsible employment, and supports his family.  Tang has a modest net worth, and should be able to pay disgorgement in the SEC proceeding.

      3.     <u>Seriousness of the Offense, Respect for the Law, Just Punishment, Adequate Deterrence, Protection of Public, Rehabilitation of Defendant</u>

In fashioning a sentence, the Court must weigh the need for specific deterrence with the need for general deterrence.  With insider trading, the need for general deterrence is great.  "[I]nsider trading is an easy crime to commit but a difficult crime to detect."  Sentencing Memorandum and Order at 13*, United States v. Rajat Gupta*, CR 11-00907 (JSR) (S.D.N.Y.) (ECF No. 127).  Here "[c]onsiderations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."

*United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) (Posner, J.) (discussing sentencing in bid rigging case).

In addition to promoting respect for the law, a sentence should provide just punishment. Insider trading is a serious crime that threatens the integrity of our trading system. It is a form of cheating, and any sentence must reflect society's disapproval for this form of cheating. The need for adequate deterrence and just punishment mandate a significant sentence.

**D.    Restitution**

Neither Acxiom, Tempur, ValueAct, nor FFL (the companies whose information was misappropriated and/or whose trust was abused) have requested restitution.[2]

Under the Mandatory Victim Restitution Act (MVRA), restitution is mandatory for offenses "against property under [Title 18 of the United States Code] . . . including any offense committed by fraud or deceit . . . in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1). A victim is a person "directly or proximately" harmed as a result of the commission of the underlying offense. 18 U.S.C. § 3663A(a)(2). The MVRA applies in this case. *See United States v. Skowron,* 839 F. Supp. 2d 740 (S.D. N.Y. 2012) (discussing the MVRA in a conviction for an 18 U.S.C. § 371 conspiracy to commit securities fraud and noting that none of the parties dispute "that Skowron's offense is one to which mandatory restitution applies").

However, § 3663A does not apply if the Court finds that "determining complex issues of fact related to the cause or the amount of the victim's loss would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(B)

The United States recommends that the Court make this finding, and not order restitution; in the alternative, the United States requests that the Court set a date between 60 and 90 days after sentencing for the final determination of victims' losses. *See* 18 U.S.C. § 3664(d)(5).

---

[2] The need to provide restitution is another factor to be considered in imposing a sentence. 18 U.S.C. § 3553(a)(7).

In insider trading cases, generally "the victims and their losses are difficult, if not impossible to identify." U.S.S.G. § 2B1.4, Commentary, Background. Losses are difficult to determine in securities cases like this because of the "tangle of factors affecting [stock] price." *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 343 (2005) (finding that an investor claiming securities fraud under the Securities Exchange Act cannot satisfy the requirement of proving that the fraud caused an economic loss simply by alleging in the complaint, and subsequently establishing, that the price of the security on the date of purchase was inflated because of the misrepresentation). To determine loss, a court "must disentangle the underlying value of the stock, inflation of that value due to the fraud, and either inflation or deflation of that value due to unrelated causes." *United States v. Zolp*, 479 F.3d 715, 720 (9th Cir. 2007) (describing the necessary calculus in determining loss, for Guidelines purposes, in a pump and dump scheme).

One difficulty in establishing loss is the sheer volume of trades of any stock on any given day. Here for example, on March 20, 2008, the first day the Tang and the others began closing their Tempur positions, more than twelve million shares of Tempur were traded.[2] During the seven days that Tang and the others were trading Tempur (March 13, 14, 17, 18, 19, 20, and 24) based on insider information, the total volume of Tempur traded was over thirty-nine million.[3] In addition to the volume of trades, it is hard if not impossible to disentangle normal market influences on a share price from the influence of a fraud on share price. In this case, in addition to the normal market influences on share price, there was the extraordinary influence of the collapse of Bear Stearns, which began on March 13, 2008. Thus the determination of loss here is particularly complex.

Moreover, the need to provide restitution is minimized because in the parallel SEC case,

---

[2] *See* Yahoo! Finance at http://finance.yahoo.com/q/hp?s=TPX&a=02&b=12&c=2008&d=02&e=24&f=2008&g=d

[3] *Id.*

Tang has agreed to disgorge his gains from the offense.  If appropriate, the SEC has the option of using that disgorgement to establish a "fair fund" to pay harmed investors.

## CONCLUSION

For the reasons discussed above, the United States respectfully requests that the Court impose a sentence of 41 months' imprisonment, followed by 3 years of supervised release, and a $100 special assessment.

DATED:  February 21, 2013                                 Respectfully submitted,

MELINDA HAAG
United States Attorney


_____s/_____
JONATHAN SCHMIDT
Assistant United States Attorney